**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FAZAL WAJID,<br>Petitioner,<br>v.<br>ERNESTO SANTACRUZ JR. ET AL.,<br>Respondents. | Case No. 5:26-cv-04034-AYP<br>**ORDER GRANTING PETITION AND ISSUING A WRIT FOR HABEAS CORPUS** |

## I. SUMMARY

Petitioner, Fazal Wajid, a citizen of Pakistan who is currently in the physical custody of Respondents at the Adelanto ICE Processing Center, in Adelanto, California. (Dkt. No. 1. ("Petition").) Petitioner entered and was paroled into the United States in 2017 and has remained continuously present for approximately nine years. *Id*. at 2.

On July 20, 2026, Petitioner filed this Writ of Habeas Corpus under 28 U.S.C. § 2241, arguing Respondents improperly classified him as an

"arriving alien" subject to mandatory detention under 8 U.S.C. § 1225(b). *Id.* He argues he is subject to discretionary detention under 8 U.S.C. § 1226(a). Further, he argues his detention without an individualized hearing before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment. Petitioner seeks an order granting release under his prior conditions of supervision or, in the alternative, a prompt bond hearing at which the Government bears the burden of justifying his continued detention.

In their Answer, Respondents state, "His detention is authorized by § 1225(b)," because "he is an applicant for admission who entered the United States and sought admission." (Dkt. No.  at 2 ("Answer.").) They argue that his only available remedy is a *Rodriguez* bond hearing once sufficient detention time has passed. (Ans. at 5.) Respondents did not present opposition to Petitioner's due process claim. *Id.*

In light of Respondents' position, the Court finds that Petitioner has demonstrated that the Government violated his right to due process by re-detaining him without notice and an opportunity to be heard. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing his re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to detain him.[1]

## II. FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel. (Pet. at

---

[1] The Court "may take judicial notice on its own" and "at any stage of the proceeding." Fed. R. Evid. 201. This Court may take judicial notice of "court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). *See U.S. ex rel. Robinson Rancheria Citizens Council v. Bornea, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (finding courts "may take judicial notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"). The Court takes judicial notice of *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir.

10.) Respondents either did not dispute these facts in their Answer or confirmed them to be true. (Dkt. Nos. 8, 8-1.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. *See* C.D. Cal. L.R. 7-12; *Carlson v. Landon*, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner Fazal Wajid is a citizen and national of Pakistan. (Pet. ¶ 13.) On August 22, 2017, he arrived at Miami, Florida, and was paroled into the United States under INA § 212(d)(5)(A). (Pet. ¶ 14.) He has remained physically present in the United States for approximately eight to nine years. *Id.*

Approximately one year after his entry, at the direction of the U.S. Citizenship and Immigration Services ("USCIS") official supervising his parole, Petitioner briefly departed the United States and presented himself for inspection at the Otay Mesa, California Port of Entry on or about August 22, 2018.[2] (Pet. ¶ 14.) He was inspected, briefly detained, and released the same day on his own recognizance ("OREC"). *Id.* That was the only occasion on which Petitioner departed and re-entered the United States. *Id.*

Petitioner's parole was renewed annually through 2023, and his employment authorization was renewed on each occasion; his most recent employment authorization, issued in 2023, was granted for a five-year term. (Pet. ¶ 15.) Petitioner applied for asylum, withholding of removal, and

---

2026) which directly addresses some of the issues in this Petition but was published after the Petition was fully briefed. The Ninth Circuit found that noncitizens who were apprehended in interior of United States were subject to Immigration and Nationality Act's (INA) discretionary detention regime and the INA's mandatory detention provision applies only to noncitizens entering United States at border).

[2] Respondents state that Petitioner entered the United States at Otay Mesa Port of Entry on August 30, 2019, and applied for admission to the United States from Mexico, but do not provide documentation or evidence to support the assertion. (Ans.)

protection under the Convention Against Torture based on his fear of retaliation for his cooperation with United States authorities in the apprehension of an individual involved in human smuggling. (Pet. ¶ 16.) He filed Form I-589 on January 23, 2023, and an amended Form I-589 on or about June 24, 2026. *Id*. That application remained pending at the time of this Petition.

Petitioner has no criminal history, has complied with all conditions of his parole, maintained employment authorization, updated his address as required, and appeared as required throughout his continuous presence, most recently residing in Upland, California. (Pet. ¶ 17.)

On July 9, 2026, Petitioner appeared for his scheduled affirmative asylum interview before USCIS. (Pet. ¶ 18.) Before the interview took place, Immigrations Customs and Enforcement ("ICE") officers apprehended him and took him into custody, and he has remained detained at the Desert View Detention Facility since that date. *Id.*

On July 14, 2026, the Department of Homeland Security ("DHS") issued, served, and filed a Notice to Appear classifying Petitioner as an arriving alien and charging inadmissibility under INA § 212(a)(7)(A)(i)(I). (Pet. ¶ 19.) The Notice to Appear alleges that Petitioner applied for admission at Otay Mesa on August 30, 2019. *Id*. Petitioner disputes this. However, he argues that under either the August 30, 2019, date or his actual application date in 2018, he was paroled years ago and has remained continuously present. *Id*.

On July 20, 2026, Petitioner filed this Writ of Habeas Corpus under 28 U.S.C § 2241, seeking an order requiring Respondents to release him from immigration detention. (Pet.) Petitioner argues he is subject to discretionary detention under § 1226(a), not mandatory detention under § 1225(b), and that

Respondents detained him without notice and a hearing prior to re-detention thereby violating his due process rights. He seeks an order requiring Respondents to release him from immigration detention or to provide an immigration bond hearing. (Pet. at 10.)

In their Answer, Respondents argue Petitioner applied for admission to the Untied States from Mexico on August 30, 2019. They state his removal proceedings began on July 14, 2026 when he was issued a Notice to Appear ("NTA") Respondents state, "Petitioner is not entitled to an initial bond hearing under [§]1226(a), because he is an applicant for admission who entered the United States and sought admission (rather than entering without inspection and being subsequently arrested, as with *Baustista* class members). His detention is authorized by [§]1225(b)." (Ans. at 5.) They further argue that Petitioners only remedy is to "request a *Rodriguez* bond hearing when sufficient detention time has passed." *Id*. Respondents did not present opposition to Petitioner's due process claim. *Id*.

It is undisputed that Petitioner entered the United States sometime in 2019, was released on his own recognizance, and was not placed in removal proceedings until 2026.

For the reasons set forth below, the Court **GRANTS** the habeas petition.

## III. PROCEDURAL HISTORY

Petitioner filed the instant habeas petition on July 20, 2026. (Pet.) The same day, Petitioner filed an application for Temporary Restraining Order ("TRO"). (Dkt No. 3.) The Court, on July 20, 2026, entered the Notice of General Order 26-05 and Briefing Schedule, directing Respondents to show cause why the writ of habeas corpus should not be granted and thereby adopting the standard procedures and briefing schedule under the General

Order. (Dkt. No. 5.) On July 21, 2026, the Court denied Petitioner's TRO. Respondents filed their Answer on July 27, 2026. (Ans.) Petitioner filed his Reply on July 28, 2026. (Dkt. No. 10.) Thus, the matter is fully briefed.

Petitioner filed a Second TRO on September 11, 2026. (Dkt. No. 12 ("Second TRO").) Respondents filed an Opposition to the Second TRO on September 15, 2026. (Dkt. No. 13.) Petitioner filed a Reply to the Second TRO on September 15, 2026. (Dkt. No. 14.) The Court denied the Second TRO on September 21, 2026. (Dkt. No. 15.)

On July 20, 2026, Petitioner consented to proceed before Magistrate Judge for all proceedings in this case. (Dkt. No. 4.) The action has been fully consented to according to the General Order 26-05 and will proceed before a magistrate judge. (Dkt. No. 9.)

## IV. DISCUSSION

The Court now turns to the merits of Petitioners' claims. Petitioner's entitlement to a pre-deprivation hearing is dependent on the authority under which he is detained. The Court first examines which statutory authority governs his detention.

### A. Petitioner Has Been Detained Pursuant to 8 U.S.C. § 1226(a)

Title 8 U.S.C. § 1225(b)(2)(A), mandatory detention without the possibility of bond, applies only to aliens seeking admission to the United States at the border or a port of entry; it does not apply to aliens present without admission who are apprehended in the interior of the country. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026). Section 1226 ("§ 1226") generally governs the arrest, detention, and release of noncitizens present in the United States pending removal proceedings. Under the "default rule" of § 1226(a), a noncitizen may be either detained or released

on bond or conditional parole pending a decision on whether they are to be removed. *Jennings v. Rodriguez*, 583 U.S. 281, 288, 306 (2018). Pursuant to federal regulations, an alien detained under this provision is entitled to seek a bond hearing before an immigration judge. 8 C.F.R. § 236.1(d)(1); *see Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.")

The Ninth Circuit has recently clarified that where a petitioner is apprehended at the border, paroled into the country, and had been residing in the country when he was re-detained, his detention is governed by § 1226. *See Rodriguez Vazquez*, 183 F.4th at 1172 (finding "that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)," whereas "[section] 1225(b)(2)(A) . . . is best construed as applying to aliens entering the United States at the border.").

Accordingly, the Court finds that Petitioner's detention is governed by § 1226.

**B. Petitioner's Detention Violates Due Process.**

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94. Freedom from physical restraint lies at the core of this protection. *See id.* at 690–91.

When DHS released Petitioner from custody on his own recognizance, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018).

Respondents' choice to not oppose Petitioner's due process claims in their Answer is in effect a concession that the Petition should be granted. *See* e.g., *Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (noting that "failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").

Regardless, even if Respondents had not conceded the issue, the Court would grant the Petition on the merits of Petitioners' due process claim. A growing body of decisions in this District and across the Ninth Circuit have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard. *See M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal.

Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in). *See also Cruz v. Lyons,* No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129, at *1 (C.D. Cal. Nov. 6, 2025) (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in).

In analyzing a procedural due process claim, the Court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id*. at 1179–80. The *Mathews* framework considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Mathews* is not a bright-line test but rather a flexible test depending on the different circumstances. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998). Here, the *Mathews* factors tip in favor of Petitioner.

1. ***Constitutionally Protected Liberty Interest***

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due

Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which they may lawfully have remained incarcerated has a protected liberty interest in that conditional release. *Morrissey* at 408 U.S. at 482. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases). Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher,* 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Here, after initially detaining Petitioner on August 22, 2018, DHS released him on his own recognizance. (Pet.¶ 14.) Until he was re-detained on July 9, 2026, Petitioner had spent nearly eight years in the United States released on the OREC. *Id*. Petitioner is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody.

2. ***Procedural Protections***

**a) Private Interest**

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining his life out of custody. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). While Petitioner has remained subject to an OREC, which is a form of conditional parole, following his release in August 2018, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles [her] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioners' release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

The Petitioner resided in the United States for about eight years before his re-detention. (Pet. ¶¶ 14, 15, 18.) Following his release from immigration

custody, Petitioner has lived in the United States, applied for asylum, cooperated with the United States authorities in the apprehension of an individual involved in human smuggling, maintained valid employment authorization and lived openly in his community, and the present record shows no evidence of criminal history, failure to comply with the conditions of release, or any attempts otherwise to abscond. *See id*.

Multiple courts, including the undersigned Judge, have found that noncitizens developed protectable liberty interests in their release from immigration custody for periods much shorter than to those at issue here. *See, e.g.*, *Aperyan v. Semaia*, No. 5:26-CV-00699, 2026 WL 874734, at *6 (C.D. Cal. Mar. 27, 2026) (finding petitioner had resided in the United States for approximately a year and half before her recent re-detention amounted to a liberty interest); *Clene C. D. v. Robbins*, No. 1:25-CV-01463-KES-SKO, 2025 WL 3492118, at *5 (E.D. Cal. Dec. 4, 2025) (finding a petitioner had a constitutionally protected liberty interest in "eleven months she spent at liberty" following release under § 1226(a)); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to petitioner released for "over two years" under Section 1226(a)); *Pinchi*, 792 F. Supp. 3d at 1034 (same, for petitioner released "over two years" under Section 1226(a)); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025) (same, petitioner released for approximately 21 months under Section 1226(a)).

The Court therefore concludes that the Due Process Clause protects Petitioner's substantial liberty interest in maintaining his freedom from confinement. Based on this span of time in which petitioner has been at liberty, the undersigned finds that the first *Mathews* factor tilts in Petitioner's favor.

**b) Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of his liberty interest absent a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699. But Petitioner has not been afforded any process to determine whether his detention in fact advances either purpose.

Petitioner was released on an OREC nearly eight years ago and there is no evidence in the record that Petitioner violated any conditions of his release, no evidence of criminal history or attempts to abscond, and indeed there is no evidence of any material change in circumstance since he was released in 2018. (*See* Pet.) It is undisputed that Petitioner received no notice that his OREC was being revoked or explanation as to why he was being redetained, nor did he receive a hearing of any kind related to his redetention.

Respondents' only argument appears to be that Petitioner was mandatorily detained under § 1225(b) and they were therefore entitled to redetain him at any time with no additional process. (Ans. at 5.) But the Court has already rejected this argument, finding that Petitioner is detained under § 1226(a)

Furthermore, the record suggests that Petitioner is not a flight risk or danger. Petitioner's initial release from custody "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released on

conditional parole. 8 C.F.R. § 212.5 allows for release on Parole "only on a case-by-case basis for "urgent humanitarian reasons" or "significant public benefit," provided the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5. "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Since his release eight years ago, Petitioner has not given any reason to think that the Government's initial determination was in error. Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention. The Court finds the second *Mathews* factor weighs in favor of Petitioner.

**c) Government Interest**

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously" released noncitizens like Petitioners "without a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4 (collecting cases). Although the government has legitimate interests in enforcing the immigration laws and ensuring appearance at immigration proceedings, Respondents identify no concrete way in which providing notice and a short, pre-deprivation custody hearing before redetention would materially impede those interests. *Corado v. Bondi*, 2026 WL 1113386, at *5–6 (W.D. Wash. Apr. 24, 2026). Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and

consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

"[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews,* 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in his unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process.

## V. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered GRANTING the Petition; (2) a writ of habeas corpus be issued requiring Petitioner, Fazal Wajid's (A #: 213-080-807) immediate release, subject to conditions of supervision that existed prior to his detention on July 9, 2026, along with the return of his personal belongings, including all of his identification, work permits, and other documentation, and preventing his re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government will bear the burden to

prove by clear and convincing evidence that Petitioner is a danger to the community or a flight risk before Petitioner may be re-detained; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody.

Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

Dated: October 20, 2026

HON. ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE